**IN THE FEDERAL DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI**

**PENNY GIBSON AS ADMINISTRATOR
OF THE ESTATE OF BRENDA DODGE**

**Plaintiff,**

**v.**

**CROWN OPERATOR, LLC**
Serve:
FILE RIGHT RA SERVICES INC.
4607 Shrewsbury Ave., Ste E
Saint Louis, MO 63119-2817

**AMA HOLDINGS LLC**
Serve:
The Corporation Trust Company
Corporation Trust Center, 1209 Orange Street
Wilmington, DE 19801

**ASHER MARX**
Serve:
1809 New Hampshire Ave
Toms River, NJ 08755-1313

**JACQUES WOLF**
Serve:
10 Grandview Dr.
Lakewood, NJ 08701-3881

**Defendants.**

**Case No. Case No.**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

The Plaintiff, by and through undersigned counsel, submits this Complaint for

Damages against the above-named Defendants, and in further support, states and

alleges as follows:

**PLAINTIFF**

1.    Brenda Lee Dodge ("Resident") suffered avoidable pressure ulcers/bedsores on

or about December 28, 2023, at CROWN OPERATOR, LLC.

2.    The following chart tracks the right buttock injury at issue:

1

**Facility:** Crown Care Rehab & Healthcare Center, 3001 E Elm St, Harrisonville, MO 64701

**Length of Stay:** 51 days

### RIGHT BUTTOCK WOUND PROGRESSION (Primary Injury)

| DATE | STAGE | MEASUREMENTS | TISSUE FINDINGS | BATES |
|---|---|---|---|---|
| 11/29/2023 | N/A - INTACT | Not Present | Skin intact at admission | 0407 |
| 12/28/2023 | Stage II | 7.5 x 3.5 cm | Granulation tissue | 0494 |
| 01/04/2024 | Stage II | 6.7 x 2.0 x 0.1 cm | Granulation tissue | 0472 |
| 01/11/2024 | Stage III | 8.3 x 5.5 x 0.1 cm | Slough/Necrosis present | 0453 |
| 01/18/2024 | Stage III | 9.2 x 2.8 x 0.1 cm | 25% slough, 25% necrosis | 0433 |

3.    The following chart describes the extent of the right buttock injury and hospital course:

## PHASE 2: HOSPITAL ADMISSIONS (01/19/2024 - 03/25/2024)

### Saint Luke's Hospital (January 2024)

Ms. Dodge was transferred to Saint Luke's Hospital on 01/19/2024 with the Crown Care-acquired wounds. Hospital records documented 'Pressure Injury Buttocks Right;Upper' as present on admission from the nursing facility.

### Kindred Hospital Northland (02/20/2024 - 03/25/2024)

**Admission Wound Status:** RIGHT GLUTEAL/SACRAL STAGE IV pressure ulceration with 2 cm DEPTH and MUSCLE EXPOSURE. This represents progression from the Crown Care Stage III wound.

| DATE | STAGE | MEASUREMENTS | PHYSICIAN NOTES |
|---|---|---|---|
| 02/21/2024 | Stage IV | 1.5 x 1.2 x 2.0 cm | 'muscular exposure... Full thickness skin loss with extensive destruction' (Page 44, 66) |

Dodge, Brenda - Buttock Wound Chronology | Page 1 of 2

*CONFIDENTIAL - ATTORNEY WORK PRODUCT*

| DATE | STAGE | MEASUREMENTS | PHYSICIAN NOTES |
|---|---|---|---|
| 02/26/2024 | Stage IV | Improving | 'continues to improve with better granulation smaller size less depth' (Page 164) |
| 03/08/2024 | Stage IV | Nearly healed | 'wound has only wound tiny area open' (Page 379) |
| 03/18/2024 | RESOLVED | N/A | **'The right gluteal sacral wound appears resolved' (Page 590)** |
| 03/25/2024 | RESOLVED | Discharge | **'The right gluteal sacral wound appears resolved' - Discharged to Manchester Rehab (Page 746)** |

**CRITICAL:** The Stage IV pressure ulcer with muscle exposure HEALED in 34 days at Kindred Hospital with proper wound care and pressure relief. This further demonstrates the wounds were AVOIDABLE.

4.    Resident died on December 27, 2025, from causes unrelated to this action.

5.    Plaintiff Penny Gibson has been an adult over the age of 21 and is a citizen of South Carolina.

2

6. The Estate of Brenda Dodge is a citizen of Missouri.

7. Plaintiff Penny Gibson is the duly appointed administrator of the Estate of Brenda Lee Dodge brings this action for damages resulting from the negligent care provided by Defendants while Plaintiff was a resident at CROWN OPERATOR, LLC.

## DEFENDANTS

8. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

### CROWN OPERATOR, LLC

9. At all times relevant, CROWN OPERATOR, LLC was a Missouri limited liability company and owned, operated, managed, maintained, and/or controlled, in whole or in part, and did business as Crown Rehab and Healthcare Center.

10. As such, CROWN OPERATOR, LLC was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling CROWN OPERATOR, LLC.

11. Consequently, CROWN OPERATOR, LLC, owed a duty to Resident to use reasonable care for Resident's safety while under the care and supervision at CROWN OPERATOR, LLC.

12. Jacques Wolf and Asher Marx are the sole members of CROWN OPERATOR, LLC.

13. Jacques Wolf and Asher Marx are citizens of New Jersey, thereby making CROWN OPERATOR, LLC a citizen of New Jersey.

3

## AMA HOLDINGS LLC

14. At all times relevant, AMA HOLDINGS LLC was a Delaware limited liability company and owned, operated, managed, maintained, and/or controlled, in whole or in part, CROWN OPERATOR, LLC.

15. As such, AMA HOLDINGS LLC was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling CROWN OPERATOR, LLC.

16. Consequently, AMA HOLDINGS LLC, owed a duty to Resident to use reasonable care for Resident's safety while under the care and supervision at CROWN OPERATOR, LLC.

17. AMA HOLDINGS LLC and/or individuals or entities acting on its behalf, operated, managed, maintained, and controlled CROWN OPERATOR, LLC by exercising final authority over: (1) Staffing budgets; (2) The development and implementation of nursing policies and procedures; (3) The hiring and firing of CROWN OPERATOR, LLC leadership.

18. AMA HOLDINGS LLC and/or individuals or entities acting on its behalf, operated, managed, maintained, and exercised final authority over CROWN OPERATOR, LLC of: (1) Staffing budgets; (2) The development and implementation of nursing policies and procedures; (3) The hiring and firing of CROWN OPERATOR, LLC leadership.

19. It was AMA HOLDINGS LLC's intention to cut operating expenses at CROWN OPERATOR, LLC through cutting of labor expenses while increasing revenue through increased census.

20. These actions and business decisions had a direct impact on the care provided to all residents including Resident.

21. Consequently, AMA HOLDINGS LLC owed a duty to Resident to use reasonable care for Resident's safety while under its care and supervision at CROWN OPERATOR, LLC and breached said duty for all the reasons stated in this Petition.

22. Jacques Wolf and Asher Marx are the sole members of AMA HOLDINGS LLC.

23. Jacques Wolf and Asher Marx are citizens of New Jersey, thereby making AMA HOLDINGS LLC a citizen of New Jersey.

## ASHER MARX

24. At all times relevant, ASHER MARX was an individual and citizen of New Jersey.

25. ASHER MARX is the sole shareholder of each of the corporate defendants and personally controlled, directed, and managed the operations of CROWN OPERATOR, LLC.

26. ASHER MARX used the corporate defendants as mere instrumentalities to conduct business and to avoid personal liability.

27. Consequently, ASHER MARX owed a duty to Resident to use reasonable care for Resident's safety while under the care and supervision at CROWN OPERATOR, LLC.

## JACQUES WOLF

28. At all times relevant, JACQUES WOLF was an individual and citizen of New Jersey.

5

29. JACQUES WOLF is the sole shareholder of each of the corporate defendants and personally controlled, directed, and managed the operations of CROWN OPERATOR, LLC.

30. JACQUES WOLF used the corporate defendants as mere instrumentalities to conduct business and to avoid personal liability.

31. Consequently, JACQUES WOLF owed a duty to Resident to use reasonable care for Resident's safety while under the care and supervision at CROWN OPERATOR, LLC.

## DEFENDANTS' JOINT ENTERPRISE/VENTURE

32. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

33. Defendants CROWN OPERATOR, LLC; AMA HOLDINGS LLC; ASHER MARX; and JACQUES WOLF ("Joint Venture Defendants") were engaged in a joint venture in that:

    a. The Joint Venture Defendants had an agreement, express and/or implied, among the members of the group to operate CROWN OPERATOR, LLC, a Missouri licensed skilled nursing facility;

    b. The Joint Venture Defendants had had a common purpose to operate CROWN OPERATOR, LLC, a Missouri licensed skilled nursing facility;

    c. The Joint Venture Defendants had a community of pecuniary interest in the operation of CROWN OPERATOR, LLC, a Missouri licensed skilled nursing facility; and

    d. The Joint Venture Defendants had had an equal right to a voice in the direction of the operation of CROWN OPERATOR, LLC, a Missouri licensed skilled nursing facility.

    e. There has been always a close relationship between the Joint Venture Defendants relevant.

34. Because of the joint venture, the Joint Venture Defendants owed a joint duty to Resident to use reasonable care for their safety while under their care and supervision at CROWN OPERATOR, LLC.

**JURISDICTION AND VENUE**

35.   Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

36.   As alleged above, each defendant is a citizen of New Jersey.

37.   Plaintiff Penny Gibson is a citizen of South Carolina, and the Estate of Brenda Dodge is a citizen of Missouri, thereby, making the parties completely diverse.

38.   Therefore, Plaintiff brings these claims contained in the Complaint under federal diversity jurisdiction, 28 U.S.C. § 1332(a)(1), as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

39.   Pursuant to RSMo § 506.500, defendants purposefully availed themselves of the protections and/or benefits of the laws in Missouri by entering into contracts with entities in Missouri that then permitted them to commit tortious acts within the state including, but not limited to, failing to ensure that CROWN OPERATOR, LLC had appropriate policies and procedures for its nursing staff, was properly capitalized, funded, staffed, and that staff received adequate training and supervision, thereby making jurisdiction proper in this Court.

40.   A substantial part of the events or omissions giving rise to the claims described in the Complaint occurred in Missouri, thereby making venue proper in this Court.

**AGENCY**

41. The acts hereinafter described were performed by the agents, representatives, servants, and employees of Defendants and were performed either with the full knowledge and consent of Defendants, and/or were performed by their agents, representatives, servants, or employees during the scope of their agency, representation, or employment with the Defendants.

42. Furthermore, the acts hereinafter described as being performed by the agents, representatives, servants, or employees of Defendants were performed or were supposed to be performed on behalf of and/or for the benefit of Resident.

**FACTUAL BACKGROUND**

43. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

**Defendants' Treatment of Resident**

44. Resident was admitted to CROWN OPERATOR, LLC for skilled nursing care.

45. Resident was at risk for suffering pressure ulcers.

46. Upon information and belief, despite Resident's risk for skin breakdown and pressure ulcers, none of CROWN OPERATOR, LLC staff created a Care Plan for resident that implemented the appropriate interventions.

47. Upon information and belief, none of CROWN OPERATOR, LLC staff implemented or applied the appropriate interventions to address Resident's risk for skin breakdown and pressure ulcers.

48. Upon information and belief, from admission to his discharge, none of CROWN OPERATOR, LLC staff:

   a. Properly assessed Resident's risk of skin breakdown and pressure ulcers;

8

b. Implemented or provided the appropriate interventions to prevent Resident from developing pressure ulcers, including appropriate repositioning, turning schedules, and skin care;

c. Monitored or evaluated Resident's Care Plan to see if the interventions prescribed were working; or

d. Monitored Resident's condition, including Resident's skin integrity and risk for developing pressure ulcers during this time frame.

## Standard of Care Failures

49. Upon information and belief, at no point while Resident was a resident at CROWN OPERATOR, LLC did any of CROWN OPERATOR, LLC management, including the Administrator, the Director of Nursing, the clinical education coordinator, anybody from defendants, or any other staff member ever provide any sort of in-service training or clinical education to CROWN OPERATOR, LLC staff regarding the assessment, prevention, use of interventions, monitoring, and reporting of pressure ulcers in residents like Resident.

50. Upon information and belief, at no point while Resident was a resident at CROWN OPERATOR, LLC did any of CROWN OPERATOR, LLC management, including the Administrator, the Director of Nursing, the clinical education coordinator, anybody from defendants, or any other staff member ever implement the appropriate policies and procedures at CROWN OPERATOR, LLC regarding the assessment, prevention, use of interventions, monitoring, and reporting of pressure ulcers in residents like Resident.

51. Upon information and belief, while Resident was a resident at CROWN OPERATOR, LLC, CROWN OPERATOR, LLC did not have an adequate number of staff working daily at CROWN OPERATOR, LLC to meet Resident's needs, perform the interventions required to prevent Resident's avoidable pressure ulcers/bedsores, or monitor and adequately supervise Resident's condition.

**Undercapitalization/Underfunding at CROWN OPERATOR, LLC**

52. CROWN OPERATOR, LLC; AMA HOLDINGS LLC; ASHER MARX; JACQUES WOLF (hereinafter collectively referred to as the "Corporate Defendants") had a duty to provide financial resources and support to CROWN OPERATOR, LLC in a manner that would ensure that each of their residents received the necessary care and services and attain or maintain the highest practicable physical, mental, and psychosocial well-being, consistent with their residents' comprehensive assessments and plans of care.

53. The Corporate Defendants had a duty to provide sufficient financial resources to ensure there was enough properly trained and supervised staff to meet the needs of their residents.

54. Upon information and belief, CROWN OPERATOR, LLC had no autonomy to decide their own financial course, including no authority to determine how much staff they could provide or what resources were available to the staff.

55. Upon information and belief, no individuals at CROWN OPERATOR, LLC are involved in decision making about the financial operations or what its resources were and where they would be spent.

56. Transactions directed by the Corporate Defendants left CROWN OPERATOR, LLC with insufficient cash to provide sufficient qualified staff to meet the individual needs of the residents in their facility during Resident's time there.

## LEGAL BASIS FOR CORPORATE DEFENDANTS' LIABILITY

### Joint Venture/Enterprise

57. As stated above, CROWN OPERATOR, LLC; AMA HOLDINGS LLC; ASHER MARX; JACQUES WOLF are referred to herein as the "Corporate Defendants."

58. The Corporate Defendants directed, operated, and managed the day-to-day functions of their skilled nursing facilities -- including CROWN OPERATOR, LLC -- by developing and implementing policies, practices and procedures affecting all facets of CROWN OPERATOR, LLC, including resident care.

59. These policies manipulate and control the physical and financial resources and prohibit decision making at CROWN OPERATOR, LLC level.

60. This directly affects resident care by determining things such as what type and quality of nourishment is available for residents; what safety measures may and may not be used depending upon cost; the integrity of the building itself; and most importantly, how much staff is available to provide resident care and how well trained and supervised are the staff to meet the needs of the residents.

61. The Corporate Defendants affirmatively chose and decided to establish such operations and demand they be implemented.

62. Upon information and belief, such operations included the following dangerous policies and practices: (a) the aggressive recruitment and admission of high acuity patients to increase the patient census when Defendants had already chosen to understaff CROWN OPERATOR, LLC and continually maintain a staff that were not qualified nor competent to provide the care required by state law, regulations and minimum standards of the medical community; and (b) the decision to retain residents whose needs exceeded the qualification and care capability of CROWN OPERATOR, LLC's staff.

63. The Corporate Defendants consciously chose not to implement safety policies, procedures and systems which would ensure that: (a) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (b) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

64. The Corporate Defendants conducted themselves in a manner which indicates a joint venture/enterprise:

   a. The shared interest in the operation and management of skilled nursing facilities;

   b. The express and implied agreements amongst them to share in the profits and losses of such venture/enterprise; and

   c. The obvious actions taken showing the cooperation in furthering the venture/enterprise operating and managing skilled nursing facilities.

65. Missouri law recognizes a joint venture/enterprise where the parties alleged to be partners in such venture/enterprise share a common interest in the property or activity or the joint venture; maintain agreements, either express or implied, to share in profits or losses of the venture/enterprise; and express actions or conduct showing cooperation in the project of the venture/enterprise.

66. The Corporate Defendants and CROWN OPERATOR, LLC maintain agreements to share in the profits or losses of the operation of skilled nursing facilities described herein; and operate daily evincing conduct which indicates their cooperation in the venture of operating and managing skilled nursing facilities for profit.

67. The Corporate Defendants and CROWN OPERATOR, LLC took direct, overt, and specific actions to further the interest of the joint enterprise.

68. These actions were taken through a joint venture/enterprise or through the Corporate Defendants and CROWN OPERATOR, LLC's officers, directors, managers and or employees.

69. The Corporate Defendants had an equal right to share in the profits and to bear liability for, the joint venture/enterprise.

70. Further, because the Corporate Defendants and CROWN OPERATOR, LLC were dominated by each other, these entities had an equal right to direct or control their venture, as well as to direct or control the operation and management of CROWN OPERATOR, LLC.

**Direct Participation/Individual Actions**

71. The Corporate Defendants were always material to this lawsuit in the business of managing, owning, and operating a network of skilled nursing facilities throughout the Missouri and the country. One such skilled nursing facilities was CROWN OPERATOR, LLC where Resident was admitted for care and treatment.

13

72. At all times material to this lawsuit, the Corporate Defendants were fully aware that the delivery of essential care services in each of their skilled nursing facilities -- including CROWN OPERATOR, LLC -- hinged upon three fundamental fiscal and operational policies which were dictated by their choices on establishing and implementing such policies: (1) the determination of the numbers and expenditures on staffing levels; (2) the determination of the census levels within the skilled nursing facilities; and, (3) payor mix.

73. At all times material, the Corporate Defendants made critical operational decisions and choices which manipulated and directly impacted CROWN OPERATOR, LLC's revenues and expenditures. More particularly, the Corporate Defendants determined:

   a. The number of staff allowed to work in their chains of skilled nursing facilities including CROWN OPERATOR, LLC;

   b. The expenditures for staffing at the skilled nursing facilities including CROWN OPERATOR, LLC;

   c. The revenue targets for each skilled nursing facilities including CROWN OPERATOR, LLC;

   d. The payor mix, and census targets for each skilled nursing facilities including CROWN OPERATOR, LLC;

   e. Patient recruitment programs and discharge practices at each skilled nursing facilities including CROWN OPERATOR, LLC.

74. All cash management functions, revenues and expenditure decisions at the skilled nursing facilities level -- including CROWN OPERATOR, LLC -- were tightly managed, directed, and supervised by the Corporate Defendants.

75. It was the choices made by the Corporate Defendants which directly fixed the circumstances in the facilities and the level of care that could, and was, provided at the homes, including CROWN OPERATOR, LLC.

76. The Corporate Defendants formulated, established and mandated the application and implementation of the policies regarding the staffing levels and expenditures, the census levels, and payor mix.

77. The census edicts, marketing and admission practices, and resident discharge policies designed and mandated by the Corporate Defendants were implemented and such application was carefully supervised and enforced.

78. Following the mandates, CROWN OPERATOR, LLC functioned in accordance with them, filling empty beds, recruiting high acuity patients, and maintaining a census level and staffing level established and enforced as the Corporate Defendants deemed appropriate.

79. Accordingly, such manipulation by the Corporate Defendants as to staffing and census were motivated by the financial needs of the Corporate Defendants and CROWN OPERATOR, LLC as opposed to the acuity levels and needs of the residents as dictated by state and federal laws and regulations.

80. Instead of abiding by their duty to care for the residents, the Corporate Defendants chose to be guided by financial motivation which was simply to increase revenues while restricting and/or reducing expenses.

81. The Corporate Defendants, therefore, directly participated in a continuing course of negligent conduct, requiring CROWN OPERATOR, LLC to recruit and retain heavier care, higher pay residents to CROWN OPERATOR, LLC even though the needs of the patient population far exceeded the capacity of staff.

15

82. At the same time, the Corporate Defendants chose to design, create, implement, and enforce operational budgets at CROWN OPERATOR, LLC which dictated the level of care that could be provided and therefore deprived residents care, creating widespread neglect.

83. In so doing, the Corporate Defendants disregarded, superseded, and violated the duties and responsibilities imposed on a licensed skilled nursing facility, in this case CROWN OPERATOR, LLC, by the State of Missouri.

### Corporate Malfeasance

84. The Corporate Defendants consciously chose not to implement safety policies, procedures and systems which would ensure that: (1) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (2) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

85. Accordingly, the Corporate Defendants, by their operational choices and decision making, and to satisfy their desire to grow profits, created a dangerous condition that caused harm to residents.

86. These choices to establish and implement such policies and the conscious decision not to implement corrective actions or procedures disregarded the duties which the State of Missouri and federal government imposed upon the Corporate Defendants and CROWN OPERATOR, LLC.

87. Because the staffs were below necessary levels, and because the staffs that were present were not properly qualified or trained, the residents at CROWN OPERATOR, LLC including Resident, failed to receive even the most basic care required to prevent catastrophic injury and death. This negligence and resulting injuries ultimately led to and caused Resident's injuries as described above.

88. During Resident's residency at CROWN OPERATOR, LLC, Resident sustained physical injuries as described in more detail above, because of the acts, omissions, decisions, and choices made by the Corporate Defendants in operating CROWN OPERATOR, LLC.

89. During Resident's residency at CROWN OPERATOR, LLC, the Corporate Defendants negligently failed to provide and/or hire, supervise and/or retain staff capable of providing Resident with a clean, safe, and protective environment, and that, because of this failure, Resident suffered neglect, abuse, severe personal injuries, conscious pain and suffering, and deterioration of Resident's physical condition as further described above.

90. The Corporate Defendants manage, operate, and direct the day-to-day operations of CROWN OPERATOR, LLC and the Corporate Defendants are liable for this direct involvement in the operations of such Facility. The Corporate Defendants are therefore liable to the Plaintiff for the neglect of and injuries to Resident.

91. CROWN OPERATOR, LLC and the Corporate Defendants have been named as Defendants in this lawsuit for their individual and direct participation in the torts and causes of action made the basis of this lawsuit, having:

17

a. Chosen to disregard the duties and responsibilities which CROWN OPERATOR, LLC, as a licensed skilled nursing facility, owed to the State of Missouri and its residents;

b. Created the dangerous conditions described by interfering with and causing CROWN OPERATOR, LLC to violate Missouri statutes, laws and minimum regulations governing the operation of said skilled nursing facilities;

c. Superseding the statutory rights and duties owed to skilled nursing facilities residents by designing and mandating dangerous directives, policies, management, and day to day operation of CROWN OPERATOR, LLC;

d. Caused the harm complained of herein; and

e. Choosing to disregard the contractual obligations owed to the State of Missouri and the Federal Government to properly care for the residents in exchange for payment of funds for such care.

### Count I - (Negligence Against All Defendants)

92. At all times material hereto Resident was in a defenseless and dependent condition.

93. As a result of Resident's defenseless and dependent condition, Resident relied upon Defendants to provide for their safety, protection, care, and treatment.

94. At the time of the negligent acts and occurrences complained of herein and at all other times relevant hereto, Defendants, and their agents and employees, owed a legal duty to Resident to exercise that degree of skill and learning ordinarily exercised by members of their respective professions under the same or similar circumstances.

95. At all relevant times, Defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled nursing Facility.

96. These duties required Defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of all residents including Resident.

97. These duties required Defendants to have sufficient and qualified staff at CROWN OPERATOR, LLC skilled nursing facilities to ensure the proper care for, and treatment of all residents including Resident.

98. These duties required Defendants to ensure that CROWN OPERATOR, LLC's nurses and other staff were properly educated and trained regarding the care for, and treatment of all residents including Resident.

99. These duties required Defendants to ensure that CROWN OPERATOR, LLC was properly capitalized to ensure the proper care for, and treatment of all residents including Resident.

100. Specifically, during their care and treatment of Resident, Defendants and their agents, servants, and/or employees breached their duties and were guilty of the following acts of negligence and carelessly by failing to measure up to the requisite standard of care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances, including by:

   a. Failing to adequately assess, monitor, document, treat, and respond to Resident's physical condition;

   b. Failing to adequately assess Resident's risk of skin breakdown and pressure ulcers;

   c. Failing to implement and follow an appropriate turning and repositioning schedule;

   d. Failing to provide adequate nursing staff to ensure Resident received timely repositioning;

   e. Failing to provide adequate pressure-relieving devices and surfaces;

   f. Failing to maintain adequate nutrition and hydration to promote skin integrity;

   g. Failing to keep Resident clean and dry to prevent moisture-related skin breakdown;

   h. Failing to enact and carry out an adequate Care Plan regarding Resident's increased risk for pressure ulcers;

i. Failing to properly stage, document, and treat existing pressure ulcers;

101. As a direct and proximate result of the individual and collective acts of negligence of all defendants as described above, Resident and the Estate was harmed and suffered non-economic damages, including pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life; and other damages.

102. As a direct and proximate result of the individual and collective acts of negligence of all defendants as described above, Resident and the Estate suffered economic damages including past medical expenses, and other economic damages.

WHEREFORE, Plaintiff Penny Gibson prays for judgment against Defendants in an amount more than $75,000.00 and in an amount a jury deems fair and reasonable including non-economic damages and past and future medical expenses.

### Count II - (Alter Ego Against ASHER MARX)

103. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

104. CROWN OPERATOR, LLC ("Subsidiary") is so dominated by ASHER MARX that the Subsidiary is a mere instrument of ASHER MARX and is indistinct from ASHER MARX.

105. In fact, the Subsidiary is controlled and influenced by ASHER MARX in that ASHER MARX exercised complete control and domination over the Subsidiary finances and business practices.

106. Specifically, ASHER MARX complete control and domination over the Subsidiary caused the Facility's undercapitalization and understaffing while Resident was at the Facility.

20

107. ASHER MARX's complete control and domination over the Subsidiary caused the Subsidiary to operate at a loss during the two years preceding the negligence in this case.

108. ASHER MARX's complete control and domination over the Subsidiary caused the Subsidiary's liabilities to exceed its assets during the two years preceding the negligence in this case.

109. Specifically: (1) ASHER MARX own all or most of the capital stock of the Subsidiary; (2) ASHER MARX and the Subsidiary have common directors or officers; (3) ASHER MARX finance the Subsidiary; (4) ASHER MARX subscribe to all of the capital stock of the Subsidiary; (5) ASHER MARX caused the incorporation of the Subsidiary; (6) The Facility has grossly inadequate capital; (7) ASHER MARX pays the salaries and other expenses or losses of the Subsidiary; (8) ASHER MARX use the property of the Subsidiary as its own; and (9) The directors or executives of the Subsidiary do not act independently in the interest of the Subsidiary but take their orders from ASHER MARX in the latter's interest.

110. Thus, ASHER MARX used the corporate cloak of the Subsidiary as a subterfuge to defeat public convenience, to justify a wrong, and/or to perpetrate a fraud in that ASHER MARX's complete control and domination of the Subsidiary depleted all the Subsidiary's assets, thereby making it unable to pay a judgment resulting from its care of residents including Resident.

111. This undercapitalization and understaffing violated CROWN OPERATOR, LLC's duties and the applicable standard of care owed by a skilled nursing facilities operator or manager to the Facility's residents.

21

112. As a direct and proximate result of the individual and collective acts of negligence of ASHER MARX as described above, Resident and the Estate was harmed and suffered non-economic damages, including pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life; and other damages.

113. As a direct and proximate result of the individual and collective acts of negligence of ASHER MARX as described above, Resident and the Estate suffered economic damages including past medical expenses, and other economic damages.

WHEREFORE, Plaintiff, prays for judgment against Defendants in an amount more than $75,000.00 and in an amount a jury deems fair and reasonable including non-economic damages and past medical expenses.

### Count III - (Alter Ego Against JACQUES WOLF)

114. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

115. CROWN OPERATOR, LLC ("Subsidiary") is so dominated by JACQUES WOLF that the Subsidiary is a mere instrument of JACQUES WOLF and is indistinct from JACQUES WOLF.

116. In fact, the Subsidiary is controlled and influenced by JACQUES WOLF in that JACQUES WOLF exercised complete control and domination over the Subsidiary finances and business practices.

117. Specifically, JACQUES WOLF complete control and domination over the Subsidiary caused the Facility's undercapitalization and understaffing while Resident was at the Facility.

22

118. JACQUES WOLF's complete control and domination over the Subsidiary caused the Subsidiary to operate at a loss during the two years preceding the negligence in this case.

119. JACQUES WOLF's complete control and domination over the Subsidiary caused the Subsidiary's liabilities to exceed its assets during the two years preceding the negligence in this case.

120. Specifically: (1) JACQUES WOLF own all or most of the capital stock of the Subsidiary; (2) JACQUES WOLF and the Subsidiary have common directors or officers; (3) JACQUES WOLF finance the Subsidiary; (4) JACQUES WOLF subscribe to all of the capital stock of the Subsidiary; (5) JACQUES WOLF caused the incorporation of the Subsidiary; (6) The Facility has grossly inadequate capital; (7) JACQUES WOLF pays the salaries and other expenses or losses of the Subsidiary; (8) JACQUES WOLF use the property of the Subsidiary as its own; and (9) The directors or executives of the Subsidiary do not act independently in the interest of the Subsidiary but take their orders from JACQUES WOLF in the latter's interest.

121. Thus, JACQUES WOLF used the corporate cloak of the Subsidiary as a subterfuge to defeat public convenience, to justify a wrong, and/or to perpetrate a fraud in that JACQUES WOLF's complete control and domination of the Subsidiary depleted all the Subsidiary's assets, thereby making it unable to pay a judgment resulting from its care of residents including Resident.

122. This undercapitalization and understaffing violated CROWN OPERATOR, LLC's duties and the applicable standard of care owed by a skilled nursing facilities operator or manager to the Facility's residents.

123. As a direct and proximate result of the individual and collective acts of negligence of JACQUES WOLF as described above, Resident and the Estate was harmed and suffered non-economic damages, including pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life; and other damages.

124. As a direct and proximate result of the individual and collective acts of negligence of JACQUES WOLF as described above, Resident and the Estate suffered economic damages including past medical expenses, and other economic damages.

WHEREFORE, Plaintiff, prays for judgment against Defendants in an amount more than $75,000.00 and in an amount a jury deems fair and reasonable including non-economic damages and past medical expenses.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully Submitted,

STEELE LAW FIRM II, LLC

*/s/ Jonathan Steele*
Jonathan Steele
MO#63266/KS#24852/OK# #35997
Email: jonathan@nursinghomeabuselaw.com
Direct: (913) 356-9630
Office: (816) 466-5947
Fax: (913) 416-9425
nursinghomeabuselaw.com

Missouri Office
2029 Wyandotte, Suite 100
Kansas City, MO 64108

Oklahoma Office
15401 N. May Ave., Suite 1100
Edmond, OK 73013

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I hereby certify that the below-signed Attorney signed the original of the above and foregoing and is maintaining the original copy at said Attorney's office, and that on 2025-12-26 a copy of the above and foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system to all parties and attorneys of record.

*/s/ Jonathan Steele*
Attorney for Plaintiff(s)